## CENTRAL TRUST CO v SICKLES HOLDING CO

Ohio Appeals, 1st Dist, Hamilton Co

No 5121.   Decided Jan 4, 1937

Paxton & Seasongood, Cincinnati, for appellee.

Gilbert Bettman, Cincinnati, for appellant.

## OPINION

By ROSS, J.

Appeal on questions of law from the Court of Common Pleas of Hamilton County, Ohio.

The appellee brought suit against the appellant upon a promissory note. The petition was in the short form, permitted by the Code. The note was dated November 24, 1933, payable in thirty days, in the amount of $73,000.00, signed by the appellant and payable to the appellee. It authorized appellee to sell collateral hypothecated as security for the payment of the

note, consisting of a demand note of Sidney Weil, secured by 1000 shares of the E. Kleeman Company capital stock. It contained the recitals and authority usually found in a cognovit note. Pursuant to these provisions, an answer was filed confessing judgment, which was entered of record. A motion was filed to vacate this judgment, and an answer and cross-petition tendered. After hearing, the court suspended the operation of the judgment, permitting the appellant to file the answer and cross-petition, "to permit the determination of whether or not a valid defense exists to plaintiff's petition." Later, the court granted leave to file such answer and cross-petition "as though the same were an answer and cross-petition filed by leave in regular course of litigation.

**Sec 11637, GC** provides:

"A judgment shall not be vacated on motion or petition until it is adjudged that there is a valid defense to the action in which the judgment was rendered; or, if the plaintiff seeks its vacation, that there is a valid cause of action. When a judgment is modified all liens and securities obtained under it shall be preserved to the modified judgment."

In **Horwitz et v Murri, 24 Oh Ap 109, (5 Abs 134)** the second paragraph of the syllabus is:
"Suspension of judgment without taking prejudgment steps on question of irregularity in entering judgment and on question of validity of defense was prejudicial error, under §11637, GC."

In spite of the fact that the original judgment has never been vacated, and could not until it was determined that a valid defense existed, the parties have proceeded apparently as if such were the case. There never was a hearing upon the question of a valid defense. The original judgment was suspended solely for this purpose. This situation seems to have been ignored by both parties to the litigation, hence, we proceed to consider the case upon the theory that a trial upon the merits has been had.

The answer contains six defenses, one of which is a general denial. The others are filled with allegations of probative or evidentiary facts, out of which it is difficult to unearth the real defenses. These appear to be first a want of consideration in the first and all of a long series of renewal notes, forty-one in all, running from

October 29, 1929, to the last note, the subject of the present litigation; that the first note was given to the predecessor of appellee, for its sole accommodation, and with the assurance it would be shortly returned to appellant; that the proceeds were diverted to the use of a stockholder of appellant, who was a director of appellee's predecessor; that the original note being void, for want of consideration, and appellee and its predecessor taking with notice, the original and all succeeding notes were affected with the same infirmity, in the hands of appellee and its predecessor, and that the appellant is entitled to the defense of ultra vires. In a cross-petition, appellant set forth two causes of action, in which it sought, first, the recovery of amounts paid upon the note and renewals, and second, the entire face value of the original note of $100,000.00.

The reply contains a general denial and an admission of the alleged renewals of the original note given by The Bauer Auto Sales Company, predecessor of appellant. In it also are set up claims of waiver and estoppel. It is further alleged that the predecessor of appellant consisted of three stockholders—Sidney Weil, H. George Sickles, and Louis Bauer—all of whom were conversant with the entire transaction and acquiesced therein, and that Sickles bought the interests of the other two stockholders and that at the time of the filing of the instant suit, was sole owner of appellant corporation.

The appellee further alleges specific consideration for the renewal notes.

The case was first tried, resulting in a verdict for the defendant upon the petition, and in favor of the plaintiff on the cross-petition. The court set this aside upon the ground that judgment should have been given plaintiff upon its motion for an instructed verdict, the defendant then being a one man corporation. However, the court failed to then enter judgment.

The case was retried, and at the conclusion of the evidence of the defendant, the court instructed a verdict in favor of plaintiff, appellee.

It would be of no benefit to state in detail the evidence in this case. Nor would it serve any good purpose to consider seriatim the several contentions of the parties as to the effect of the evidence. To us, the case seems simple, and we will content ourselves with a statement of only such facts as we deem necessary to justify our conclusion in the premises.

The Bauer Auto Sales Company was

originally composed of three stockholders, who, to all intents and purposes, constituted the corporation. These were:—H. George Sickles, Louis Bauer, and Sidney Weil. This company executed a note payable to The Pearl Market Bank and Trust Company, which institution was later taken over by appellee bank. Whether this note was made for the accommodation of the bank, to which it was payable or Sidney Weil, one of its directors, we deem now wholly immaterial. The evidence shows clearly that all three of the stockholders at one time or another in one way or another acquiesced in the original note or its renewals, and now the only stockholder involved, the sole owner of the successor company to the original maker is the stockholder, director, and officer of such original maker, who signed the note as such officer.

There have been forty-one renewals of this note. Interest and principal has been paid thereon for a number of years. To permit the technical defense of ultra vires, even if here appropriate to intervene, would be to extend the protection of corporate entity far beyond the pale it was justly intended to reach.

We adopt the text of **10 Ohio Jur. 55, §11:**

"The fiction by which an ideal legal entity is attributed to an incorporated company, existing separate and apart from the individuals composing it, is of such general utility and application as frequently to induce the belief that it must be universal, and adhered to in all cases, although the greatest fraud may be perpetrated under the fiction as a shield. But modern cases, sustained by the best text-writers, confine the fiction to the purposes for which it was adopted, viz.,—convenience in the transaction of business, in suing and being sued in its corporate name, and, the continuance of rights and liabilities unaffected by changes in corporate membership,—and have repudiated it in all cases where it has been insisted on as a protection to fraud or any other illegal transactions; or where it is simply a stumbling block in the way of doing justice between real persons. This fiction of corporate entity can only be resorted to for the purpose of working out the lawful objects of the corporation; the courts do not recognize it when it would work an injury to anyone, or allow the corporation to perpetuate a fraud. The Ohio Supreme Court has repeatedly declared the theory that a corporation is a legal entity, apart from natural persons who compose it, to be a mere fiction instituted for convenience in the transaction of its business. and the convenience of those who do business with it, which, like every other fiction of law, when urged to an intent and purpose not within its reason and policy, may be disregarded, and the corporation held to be the individuals composing it; its decisions reflect a consistent determination to look through corporate forms as the interests of justice require, though it has endeavored to give full recognition to the important part which corporations have played in the development of state resources and business, and to the necessity of protecting them in the exercise of their legitimate function.

"So long as a proper use is made of the fiction, it is harmless, and, because it is convenient, should not be called into question. But where it is urged to an end subversive of its policy, the fiction must be ignored, and the question determined whether the act in question, though done by the shareholders,—that is, by the persons united in one body,—was done simply as individuals with respect to their individual interests as shareholders, or was done ostensibly as such, but as a matter of fact to control the corporation and effect the transaction of its business in the same manner as if the act had been clothed with the formalities of a corporate act."

See also: **Damascus Mfg. Co. v Union Trust Co., 119 Oh St 439, 447; Price Hill Colliery Co. v Old Ben Coal Corp. et, 38 Oh Ap 151 (9 Abs 308).**

This right, or rather obligation, of a court to disregard the corporate entity, when to consider it amounts to only a sham protection for responsible obligors, disposes of the contention of ultra vires, as well as the contention that the corporation is not bound under the circumstances of this case by the individual acts of all of the stockholders. In **29 Ohio Jur., 1104, §357,** it is stated:

"The cases in the various jurisdictions are not agreed upon the question whether the renewal of a bill or note precludes defenses available against the original. Some of the cases, without considering the element of knowledge of the defense on the part of the maker at the time of the renewal, announce the broad general rule that as between the original parties and transferees with notice, the renewal note is subject to the same defenses as the original. At least this is true so far as the de-

fense of failure of consideration is concerned. Other cases, likewise without considering the element of knowledge on the part of the maker of the defense hold that the execution of a renewal note by the maker precludes him from setting up a defense of which he might have availed himself as against an action on the original note. These cases, however, have involved peculiar facts, and cannot be said to establish any general rule that the renewal cuts off defenses, apart from the estoppel or waiver arising from the execution of the renewal with knowledge of the defense.

"The great majority of cases which consider the element of knowledge hold that where the maker of a note against which there is available a defense, other than one based on public policy, executes a renewal note with knowledge of the defense, his right to set up the defense is thereby cut off; the execution of the renewal note is treated as a waiver of the defense or as creating an estoppel against the maker. Even in some of the jurisdictions which have announced the broad general rule first above stated, the courts have held that the defense is waived by the execution of a renewal note with knowledge of the defense. The rule precluding the maker of a renewal note from setting up defenses available to him as against the original is not, according to some authorities, limited to cases in which such maker has had actual knowledge, but has been applied in cases in which he should have had knowledge.

"The rule that the renewal does not cut off defenses has been applied to the defense of failure of consideration and fraud. Similarly, the rule that the renewal does cut off defenses has been applied to the defense of failure of consideration, the defense of fraud, and the defense of forgery.

"Where the note is void, it is the general rule that the renewal note is likewise unenforceable."

See also: 35 A.L.R. 1259, et seq.; 72 A.L.R. 605; Brannan on Negotiable Instruments, 5th ed., 567-569.

Whether the reason for holding the maker be waiver, estoppel, or a new consideration is more an academic question than one of substantial justice.

In making its defense to the petition, the appellant has developed a situation, which, without evidence, negativing its effect, raises a presumption of an absolute estoppel to the assertion of a defense based upon

the evidence submitted by such appellant.

The contention is made that Sickles, when signing the renewals, was ignorant of his rights. The evidence is conclusive that such ignorance was of law and not of fact. The close relationship of Sickles, Bauer, and Weil precludes any other conclusion.

We find no error, prejudicial to the appellant, and the judgment is affirmed.

TATGENHORST, PJ, and HAMILTON, J, concur.